**Xin Jie LIAN, Petitioner,**

v.

**John ASHCROFT, Attorney General of the United States Respondent.**

**No. 03–4039–AG.**

United States Court of Appeals, Second Circuit.

Nov. 4, 2004.

Thomas v. Massucci, New York, N.Y., for Petitioner.

Michael R. Holden, Assistant United States Attorney (Kathy S. Marks, Assistant United States Attorney), for David N. Kelley, United States Attorney for the Southern District of New York, for Respondent, of counsel.

Present: WINTER, KATZMANN, and RAGGI, Circuit Judges.

## SUMMARY ORDER

Xin Jie Lian, a native and citizen of the People's Republic of China, petitions this Court for review of a December 9, 2002 order of the Board of Immigration Appeals ("BIA"). This order summarily affirmed the April 2, 2001 decision of the immigration judge ("IJ") denying Lian's application for relief under Article 3 of the United Nations Convention Against Torture

("CAT"),[1] and directed Lian's removal from the United States. We assume the parties' familiarity with the underlying facts and procedural history of the case.

Generally, we review the decision of the BIA, not of the IJ. *See Secaida–Rosales v. INS*, 331 F.3d 297, 305 (2d Cir.2003). But where, as here, the BIA summarily affirms the IJ's ruling, we review the IJ's decision directly. *Id.* In so doing, we may not substitute our own reasoning for that of the agency. *See Fed. Power Comm'n v. Texaco, Inc.*, 417 U.S. 380, 397, 94 S.Ct. 2315, 41 L.Ed.2d 141 (1974) ("[A]n agency's order must be upheld, if at all, on the same basis articulated in the order by the agency itself."). Thus, "we will vacate BIA [or IJ] conclusions ... that a perfectly reasonable fact-finder could have settled upon, insofar as the BIA [or the IJ] either has not applied the law correctly, or has not supported its findings with record evidence." *Jin Shui Qiu v. Ashcroft*, 329 F.3d 140, 149 (2d Cir.2003). In evaluating the applicable decision, we defer to the agency's factual findings as long as they are supported by substantial evidence. *Secaida–Rosales*, 331 F.3d at 306–07. We may reverse the agency's ruling only where we find that the evidence compels a contrary conclusion. *See INS v. Elias–Zacarias*, 502 U.S. 478, 481 n. 1, 112 S.Ct. 812, 117 L.Ed.2d 38 (1992). We may, however, remand for reconsideration or re-hearing, "where the agency's determination is based on an inaccurate perception of the record, omitting potentially serious facts." *Tian–Yong Chen v. INS*, 359 F.3d 121, 127 (2d Cir.2004). We excuse the agency's failure "to consider all factual assertions in an applicant's claim for [relief] only where the evidence ... is 'too insig-

nificant to merit discussion.'" *Qiu*, 329 F.3d at 148.

To demonstrate eligibility for CAT relief, an alien must show that upon being returned to his country of origin, he is more likely than not to be subjected to torture. *Mu–Xing Wang v. Ashcroft*, 320 F.3d 130, 133–34 (2d Cir.2003); 8 C.F.R. §§ 208.16(c). Torture is in turn defined as the "intentional infliction of pain or suffering that is perpetrated or sanctioned by a nation's authorities." *Ramsameachire v. Ashcroft*, 357 F.3d 169, 185–86 (2d Cir. 2004). Pursuant to the treaty's implementing regulations:

> In assessing whether it is more likely than not than an applicant would be tortured in the proposed country of removal, all evidence relevant to the possibility of future torture shall be considered, including, but not limited to:
>
> (i) Evidence of past torture inflicted upon the applicant;
>
> (ii) Evidence that the applicant could relocate to a part of the country of removal where or she is not likely to be tortured;
>
> (iii) Evidence of gross, flagrant or mass violations of human rights within the country of removal, where applicable; and
>
> (iv) Other relevant information regarding conditions in the country of removal.

8 C.F.R. § 208.16(c)(3).

■ On appeal, Lian argues that the IJ's decision was not based on the record as a whole. Specifically, Lian complains that the IJ ignored the country reports he submitted, including a 1999 State Department Report and an HRIC Report, detailing the harsh conditions in Chinese prisons and administrative detention facilities. Al-

1. The Convention against Torture and Other Cruel, Inhuman or Degrading Treatment or Punishment, 1465 U.N.T.S. 85, G.A. Res. 39/46, 39 U.N. GAOR Supp. No. 51, at 197, U.N. Doc. A/39/51 (1984); 23 I.L.M. 1027 (1984).

though the IJ did not closely scrutinize this evidence, we have reason to conclude that it was considered by the court. Indeed, the IJ stated at the outset of its decision that Lian had "submitted numerous background articles on conditions in China," and asserted at the close that its ruling was based on "all of the testimony and documentary evidence of record." *See Guan Shan Liao v. United States Dep't of Justice,* 293 F.3d 61, 68 (2d Cir.2002). Lian also protests that the IJ ignored the statements he included in the record of Wu Dong Wang and Xu Yao Ting. Lian, however, failed to raise this specific issue on appeal to the BIA and thus did not satisfy the exhaustion requirements necessary to preserve the issue for judicial review. *See Cervantes–Ascencio v. INS,* 326 F.3d 83, 87 (2d Cir.2003) (citing 8 U.S.C. § 1252(d)(1)). We therefore may not consider it on appeal.

█ Upon consideration, we also find that the background materials do not compel the conclusion that Lian, more likely than not, would be subjected to torture upon his return to China. As the IJ found, the newspaper articles reporting a trend in certain areas of China toward detaining, imprisoning, and otherwise punishing returning illegal emigrants do not by themselves establish a likelihood that these emigrants will be tortured. Moreover, while the State Department Report asserts that "police and other elements of the security apparatus [in China] employed torture and degrading treatment in dealing with detainees and prisoners," it does not prove that a person arrested or detained for leaving the country illegally will more likely than not be subjected to torture. Nor is there any indication in the record that upon his return to China, Chinese authorities are likely to place Lian in one of the Custody and Repatriation Centers described in the HRIC Report. On the contrary, the Report suggests that these detention facilities are used to hold Chinese citizens, who relocate within China without the requisite registration. There is therefore no basis for us to reverse the IJ's denial of Lian's application for CAT relief.

Accordingly, the petition is DENIED and the order of the Board of Immigration Appeals is AFFIRMED.